Next case, call for oral argument is in re Marriage of Cozadd. in re Marriage of Cozad. Thank you. Thank you, counsel. Counsel? Yes, please. So, Ms. Fitz, I suggest that you begin with the calculations because that's where the crux of at least my hearing is. And quite frankly, your honor, there's been a lot of smoke and mirrors about the calculations of Mr. Cozad's income. And I can make it very simple for the court. Based upon his own figures set forth to the court and to myself in a sworn affidavit as of May of 2015, leading up to a trial that occurred in November of 15, months later, Mr. Cozad, and I'm sorry, your honor, I'm going to address that very shortly, Mr. Cozad chose not to give the trial court information of his income at the time of trial. He chose to give only up through April of 2015. That is important for several reasons. But to address your remark, judge, if you look at page three of my brief, I have set forth very simply how Mr. Cozad himself came up with his income that was almost accurate on his financial statement. And what Mr. Cozad is asking this court to do is assume that his sworn calculation of gross income of almost $42,000 a year was a mistake, his sworn monthly salary of $11,900, almost $12,000 a month was a mistake, and his bonus income of $1,168 was a mistake, all on that same sworn affidavit. And the reason that this is so egregious, your honors, is because the very attachments to his trial exhibit, which was Respondents Exhibit 1 at trial, show that on his wage and earnings statement, civilian wage and earnings statement, which is appendix number 33 in Mr. Cozad's brief, shows that he was paid, as of April 18, 2015, the sum of $34,906.60. Then his pay as a reservist is under A36 of his brief, shows that as of April 29, 2015, he had been paid $7,609.92. If you total those, you come up with, as of the month of April, end of the month of April of 2015, Mr. Cozad had been paid $42,516.52, actually slightly more than he claimed on his affidavit, but he was very close. He had it right at $42,000. That's where Mr. Cozad came up with his figures, and that is exactly right on. And with what he put on his affidavit. If you extrapolate that out, and by the way, this is all the trial court had in front of her, it was not my client's burden to prove Mr. Cozad's income. When Ms. Cozad filed her petition for dissolution of marriage, she made allegations only as to what she thought his income was at that time. But lo and behold, once we got the documents attached to Mr. Cozad's sworn financial statement, we found out he was earning a lot more than he was claiming. And as I said, $42,000, if you extrapolate that out over the remaining two-thirds of the year, you come up with approximately $125,000 in income. It was Mr. Cozad's job. If he was going to claim that he made less than that, he should have produced income statements between April and leading up to trial in November to show, hey, I didn't make that much. It was incumbent upon the trial court to find his income based upon the most recent earnings leading up to trial. And that was all Mr. Cozad gave this trial judge. So, Mr. Cozad, I don't know what the smoke and mirrors are behind this claim of, well, look at this figure, look at that figure, look at this figure. It is clear in black and white on those wage and earnings statements what his income is. You don't have to go through all these machinations. And he was right on when he did his sworn statement. I think once he got into the courtroom and realized what he was facing, and the court noted there was a credibility problem with Mr. Cozad, he started backing away from what he had sworn was his income. I would like to address the trial support issue. First of all, you can't come back after trial and try to shove in evidence that you could have produced at trial. And there's two reasons why Mr. Cozad couldn't do it. Number one, to have the court properly consider an abatement of that child support, Mr. Cozad would have been required to have an order showing that it had been abated. That didn't happen. A mere petition is not adequate to cause an abatement of child support. We all know that. The court must order that for it to be considered by this judge in determining Mr. Cozad's income. Secondly, on that same sworn affidavit from May of 2015, Mr. Cozad claimed expenses for children in the amount of $770 a month. So he wants to have it both ways. He wants to claim that he has put out $770 a month, but he did not, on his sworn affidavit, include the child support at all. That also came out at trial. So no wonder the trial court had an issue with Mr. Cozad's credibility, as well as she should have. Judge Gomerich allowed in all of the appropriate evidence. There's an argument in Mr. Cozad's brief that, well, his possible future loss of income should have been considered. There was no evidence presented other than a self-serving statement, well, I might retire sometime in the future. Trial court could not accept that speculation, nor was there any calculation to apply. The judge did what was totally proper. She looked at the relative incomes of the parties. She noted in her initial findings that the 40%, based on Mr. Cozad's calculations, was only $129, the difference was only $129 off the 40%. However, if you look at the wage stubs that Mr. Cozad attached to his financial statement, the 40% and more was met. The trial judge didn't make the calculations before she made that statement, but it is apparent that the 40% and more was met. Not only that, the amount of maintenance that was awarded was awarded not so that Ms. Cozad could buy a new house, although that certainly should have been a consideration of the trial court, because the evidence at trial was the parties enjoyed a very comfortable lifestyle for 11 years. And that comfortable lifestyle included living in a beautiful home and having a very comfortable living. Michelle was living in a $750 a month apartment, because that was all she could afford after the parties separated. And although it is argued that Michelle had $1,100 a month and left, based on her financial affidavit, that was because she was only affording a $750 a month apartment, utilities comparable to the apartment she was living in, and not what she had been used to during the course of the marriage. Most importantly, what the trial court also considered is, based on Mr. Cozad's sworn financial statement, without including his monthly child support, Mr. Cozad had more than $5,200 a month in excess disposable income at the end of the day. That is his own writing, that is his own testimony. At trial, it was never refuted by him or anyone else. The fact is, with such a discrepancy at the end of an 11-year marriage, with him having that much excess, and Michelle struggling and not able to live in the lifestyle, even get back her financial footing, the trial court appropriately did what was fair, what was reasonable, and explained in detail in her amended judgment of dissolution how she came to the conclusions that she did. She based it on specific findings as to the factors contained in 5504. So, Your Honors, I would suggest that the trial court did what she was ordered to do upon remand, that her findings were fair and just, that there is no way her findings were not reasonable under the situation where Mr. Cozad's own documents show what his income is, shows that his disposable at the end of the month exceeds $5,200, and that he can afford it, that my client needed it, and that it was a just resolution for these parties. Thank you. Thank you, Your Honor. Counsel? Thank you. I'd like to address the smoke and mirrors comment. The smoke and mirrors is based on the creative ordering that was done by trial counsel at the time of the trial. Mr. Cozad's financial affidavit, while we want to continue to say it was a sworn financial affidavit, he admitted at the trial he made the mistakes. This is not something he's deciding afterwards. He made the mistakes, and the trial court specifically stated in its oral ruling that it believed that a mistake was made with regard to Evan's monthly calculation, because he reported a heck of a lot more per month than the documents attached provide. And the issues as it related to the April earnings statements, I have identified. He had received a bonus that he had not received before, and also he had just performed, as the reservist, one of two weeks per year. And so that is why his identification of gross income is, yes, it's inaccurate as to what he normally would receive on a monthly basis, but it does coincide with what his April earnings statement said. And that's where he came up with it. And he didn't do the math himself to look at it and say, if I say I make this each month and I multiply that by 12, my earnings will be in excess of $160,000 per year. That's $50,000 to $60,000 more than what was ever reported on his 2014 W-2 and tax returns that were filed jointly with Ms. Kozak. And so those were the mistakes that were refuted at trial by Mr. Kozak's own testimony. And he explained them, and they are accurate when you look at what his actual earnings statements reflect showing his 2014 W-2s as well as the earnings statements attached. They do show that he reported a heck of a lot more income than he actually received. And at the time of the motion to reconsider, Mr. Kozak attempted, as a way of the motion to reconsider, to present his 2015 W-2s, which he could not have produced at the time of the trial, in November, because they were not available at that time, to reflect exactly what he earned in 2015, so that we wouldn't have to sit here today and have an extrapolation and a smoke-and-mirrors argument that just because Mr. Kozak, who had never filled out a 14-page financial affidavit and had to actually deal with this in a trial setting, when he made that mistake, he was not aware that then the court would be able to say, well, you actually make over $60,000 more than you've ever reported as income. And so, as to the second point, the standard of living, I think it's important to note that Ms. Kozak herself said that she had made her career, she had lived in a home prior to the marriage, and that the beautiful home that continues to be represented by Ms. Kozak's counsel, as well as the trial court, was worth less than what their mortgage was. They had cars that were over 10 years old. There was no testimony that they actually should have been living in that home. And it had to be a four-bedroom because Mr. Kozak was the custodial father to his two children that he was responsible for. Are you saying they shouldn't have been living the lifestyle they were living? Is that what you're going towards? I'm saying that the argument that they lived this lavish standard of living and an extraordinary standard of living that should continue afterwards is inaccurate based on the evidence that was actually presented. You're talking about somebody that said it was lavish? I believe that Ms. Kozak's counsel has in her brief, as well as the court, identified that it was a beautiful home and that that was the standard of living that she was entitled to. However, and I believe the courts have said that as a result of a divorce, people cannot maintain living that exact standard of living because they have to separate and live in two homes. No, I think that the court says that they couldn't replicate it, but they could approximate it. And there is a difference. And I think you are correct that there is a difference. However, in this case, what they were replicating was based on Evan Kozak having two children and they needed a four-bedroom house. It's not based on the two of them together. No, I'm talking about approximating. I think that is the law that, you know, you can attempt to approximate. And generally, you can't replicate. Okay. And I would agree with you on that. And I think under the facts in this case, there wasn't enough evidence to support that first, the calculations would allow for maintenance, but also that if they did, that maintenance should even be awarded based on the financial situations. And I would direct as relates to my brief, I put in two cases that I believe that are directly on point, the Schuster and Wyszynski case, which identified Ms. Kozak had significant disposable income and the parties had not lived the standard of living to enjoy maintenance. So, thank you very much. Thank you. Thank you. We appreciate the briefs and arguments of counsel. We will take this case under advisement, issue a ruling in due course.